ORIGINAL

1  QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
     Adrian M. Pruetz (Bar No. 118215)
2    Edith Ramirez (Bar No. 165872)
     Adam D. Samuels (Bar No. 179472)
3  865 South Figueroa Street, 10th Floor
   Los Angeles, California  90017-2543
4  (213) 624-7707

5  Attorneys for Defendant
   Mattel, Inc.
6

7              UNITED STATES DISTRICT COURT

8             CENTRAL DISTRICT OF CALIFORNIA

9                   WESTERN DIVISION

10
   HARRY R. CHRISTIAN, an individual,)    CASE NO. 99-02820  NM (BQRx)
11                                      )
                   Plaintiff,           )    DEFENDANT MATTEL, INC.'S
12                                      )    NOTICE OF MOTION AND MOTION
        v.                              )    FOR RULE 11 SANCTIONS; AND
13                                      )    MEMORANDUM OF POINTS AND
   MATTEL, INC., a corporation;         )    AUTHORITIES IN SUPPORT
14 COLLEGIATE DOLL COMPANY, a sole      )    THEREOF
   proprietorship; and CLAUDENE         )
15 CHRISTIAN, an individual,            )    Date:  August 2, 1999
                                        )    Time:  10:00 a.m.
16                 Defendants.          )    Dept:  11
                                        )
17 ─────────────────────────────────────)    [Honorable Nora Manella]
   AND RELATED COUNTERCLAIM AND         )
18 CROSS-CLAIMS.                        )
                                        )
19

20 TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

21         PLEASE TAKE NOTICE that on August 2, 1999 at

22 10:00 a.m., or as soon thereafter as the matter may be heard in

23 the above-entitled Court, located at 312 North Spring Street,

24 Los Angeles, California, defendant Mattel, Inc. ("Mattel"), will,

25 and hereby does, move the Court, pursuant to Fed. R. Civ. P. 11,

26 for an order imposing sanctions on plaintiff Harry Christian and

27 his counsel of record, James B. Hicks, for the improper filing of

28 this frivolous $2.4 billion copyright infringement action against

07106/256938.1                          -1-                      JUL 14 1999

1  this frivolous $2.4 billion copyright infringement action against

2  Mattel.  This Motion is made on the grounds that plaintiff's

3  copyright action is frivolous, is completely devoid of

4  evidentiary support and was filed without sufficient knowledge,

5  information and belief formed after any reasonable inquiry, and

6  was filed for the improper purposes of harassing Mattel and

7  obtaining publicity for plaintiff, plaintiff's company, the

8  Collegiate Doll Company, and plaintiff's counsel.

9       This Motion is based on this Notice of Motion; the

10  accompanying Memorandum of Points and Authorities; the

11  accompanying Declaration of Edith Ramirez and the exhibits

12  attached thereto; the Declarations of Suzanne Schlundt and Adam

13  D. Samuels filed in support of Mattel's pending summary judgment

14  motion on plaintiff's copyright claims, and the exhibits attached

15  thereto; the pleadings and other papers on file in this action;

16  such matters of which this Court may take judicial notice; and

17  such further argument and evidence which may be presented at or

18  before the hearing.

19       Pursuant to Fed. R. Civ. P. 11(c)(1)(A), this motion

20  shall only be filed if, within 21 days of service on plaintiff,

21  plaintiff and his counsel do not withdraw the complaint in this

22  action.  This office caused plaintiff's counsel to be personally

23

24

25

26

27

28

1  served with this motion on June 22, 1999, thus also complying

2  with the pre-filing requirements of Local Rule 7.14.1.

3

4  DATED:   June 22, 1999

5                          QUINN EMANUEL URQUHART OLIVER &
                           HEDGES, LLP
6

7                          By _____
8                             Edith Ramirez
                             Attorneys for Defendant
9                             Mattel, Inc.

-3-

1

## TABLE OF CONTENTS

2

**Page**

3  MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . 1

4  Preliminary Statement . . . . . . . . . . . . . . . . . 1

5  Factual Background . . . . . . . . . . . . . . . . . . 3

6  Argument . . . . . . . . . . . . . . . . . . . . . . 9

7  I.    THE RULE 11 STANDARD . . . . . . . . . . . . . . 9

8  II.   PLAINTIFF'S ALLEGATIONS OF COPYRIGHT INFRINGEMENT ARE
       FRIVOLOUS . . . . . . . . . . . . . . . . . . 11

9

10 III. PLAINTIFF AND HIS COUNSEL HAD AN IMPROPER MOTIVE IN
      FILING AND PURSUING THIS SUIT . . . . . . . . . . 14

11     A.    The False and Misleading Statements By CDC and Its
            Counsel . . . . . . . . . . . . . . . . . 16

12

13     B.    This Court Should Sanction Mr. Hicks For His
            Violations Of Rule 11 and the Rules Of
            Professional Conduct . . . . . . . . . . . 21

14 Conclusion . . . . . . . . . . . . . . . . . . . . . 22

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## CASES

<u>Aetna Life Ins. Co. v. Alla Medical Services, Inc.</u>,
    855 F.2d 1470 (9th Cir. 1988) . . . . . . . . . . . 22

<u>Business Guides, Inc. v. Chromatic Communications
Enterprises, Inc.</u>,
    892 F.2d 802 (9th Cir. 1989),
    <u>aff'd</u>, 498 U.S. 533 (1991) . . . . . . . . . . . . 9

<u>Cooter & Gell v. Hartmarx Corp.</u>,
    496 U.S. 384 (1990) . . . . . . . . . . . . . . . . 9

<u>Estate of Blue v. County of Los Angeles</u>,
    120 F.3d 982 (9th Cir. 1997),
    <u>cert. denied</u>, 118 S. Ct. 1042 (1998) . . . . . . . 10

<u>Golden Eagle Distributing Corp. v. Burroughs Corp.</u>,
    801 F.2d 1531 (9th Cir. 1986) . . . . . . . . . . . 9

<u>Grubb v. KMS Patriots, L.P.</u>,
    88 F.3d 1 (1st Cir. 1996) . . . . . . . . . . . . . 11

<u>Hudson v. Moore Business Forms, Inc.</u>,
    836 F.2d 1156 (9th Cir. 1987) . . . . . . . . . . . 13

<u>Rhinehart v. Stouffer</u>,
    638 F.2d 1169 (9th Cir. 1979) . . . . . . . . . . . 9

<u>Rothman v. Jackson</u>,
    49 Cal. App. 4th 1134 (1996) . . . . . . . . . . . 22

<u>Smith v. Ricks</u>,
    31 F.3d 1478 (9th Cir. 1994),
    <u>cert. denied</u>, 514 U.S. 1035 (1995) . . . . . . . . 10

<u>Townsend v. Holman Consulting Corp.</u>,
    929 F.2d 1358 (9th Cir. 1990) (en banc) . . . . . . 10

<u>Zaldivar v. City of Los Angeles</u>,
    780 F.2d 823 (9th Cir. 1986),
    <u>overruled on other grounds</u>,
    <u>Cooter & Gell v. Hartmarx Corp.</u>,
    496 U.S. 384 (1990) . . . . . . . . . . . . . . . . 10

## STATUTES

<u>Business & Professions Code</u> § 6068(d) . . . . . . . . . 15, 21

07106/256938.1

## TABLE OF AUTHORITIES
### (continued)

**Page**

<u>California Rules of Professional Conduct</u>
5-120 (West 1996) . . . . . . . . . . . . . 15, 16, 21

<u>Fed. R. Civ. P.</u> 11 . . . . . . . . . . . . . 9, 21, 22

<u>Fed. R. Civ. P.</u> 11(b) . . . . . . . . . . . . . 9

<u>Fed. R. Civ. P.</u> 11(c) . . . . . . . . . . . . . 10

<u>Fed. R. Civ. P.</u> 11(c)(2) . . . . . . . . . . . 10

### OTHER AUTHORITIES

Goldstein, <u>Copyright</u> (1999 Supp.)
§ 7.2.2 at 7:18 . . . . . . . . . . . . . . 11

07106/256938.1

MEMORANDUM OF POINTS AND AUTHORITIES

Preliminary Statement

As this Court is by now aware, this is not the first time that Mattel, Inc. ("Mattel") has encountered plaintiff Harry Christian and his counsel, James B. Hicks, in litigation.   In August 1997, Mattel filed an action against plaintiff's daughter, Claudene Christian, and their company Collegiate Doll Company (plaintiff, Claudene Christian and Collegiate Doll Company are hereinafter referred to collectively as "CDC") seeking to enjoin and recover damages for CDC's marketing and selling of knock-off BARBIE dolls.   In that litigation, CDC and Mr. Hicks pressed seven baseless counterclaims and filed frivolous motion after frivolous motion.   Judge A. Howard Matz ultimately put a stop to these baseless filings by dismissing all of CDC's counterclaims on summary judgment and denying outright Mr. Hicks' numerous appeals of Magistrate Judge Robbins' discovery rulings.   Shortly thereafter, with trial imminent, Mattel succeeded in reaching a favorable settlement with CDC.

As it turned out, however, neither the rulings by Judge Matz nor the settlement with Mattel was enough to end CDC's frivolous filings.   Just weeks after Mattel settled the prior action with CDC, plaintiff Harry Christian and Mr. Hicks filed this sham $2.4 billion copyright infringement action against Mattel on behalf of CDC.   Plaintiff claims that Mattel has developed "new" BARBIE doll heads that infringe CDC's "Claudene" doll head copyright.   The claim is entirely frivolous, and is

-1-

1 precisely the type of claim that warrants the imposition of

2 sanctions.

3     Rule 11 of the <u>Federal Rules of Civil Procedure</u> grants

4 the Court discretion to impose sanctions against a party and its

5 counsel for the filing of an action that is either frivolous or

6 brought for an improper purpose.  Both factors apply here.

7     A reasonable investigation by plaintiff or Mr. Hicks

8 would have revealed that there is <u>no</u> factual foundation for

9 plaintiff's $2.4 billion copyright claim.  Plaintiff has

10 identified two BARBIE doll head sculptures as allegedly

11 infringing the Claudene doll head sculpture--the heads on the

12 Cool Blue BARBIE doll and the Virginia Tech UNIVERSITY BARBIE

13 doll.  The head sculptures used in both dolls, however, were

14 created long before 1996, when the Claudene doll head was

15 created.  Plaintiff and his counsel could have ascertained this

16 critical fact simply by examining the back of the heads of the

17 BARBIE dolls they claim are infringing, which have a copyright

18 notice molded into them, or by comparing them to the millions of

19 prior BARBIE dolls in existence and displayed in the books and

20 catalogs produced in the parties' prior lawsuit.  Instead,

21 plaintiff and his counsel saw fit to file this sham litigation

22 against Mattel on behalf of CDC and to seek $2.4 billion in

23 damages.  They did so not to enforce any legitimate right, but

24 rather for the purpose of harassing Mattel and obtaining

25 publicity for CDC and Mr. Hicks.  Even after Mattel confronted

26 plaintiff and Mr. Hicks with indisputable evidence that the doll

27 head sculptures sued upon had never been changed and were

28

07106/256938.1

1    identical to countless dolls sold by Mattel over the past twenty-
2    three years, they refused to withdraw the suit.

3         The improper motives behind plaintiff's and his
4    counsel's filing of this action were most recently on display
5    during CDC's and Mr. Hick's latest publicity ploy to disparage
6    Mattel--a segment on the national, tabloid television program
7    "Extra" in which Mr. Hicks and Claudene Christian make numerous
8    false and misleading statements about Mattel and the parties'
9    prior and current litigation.  This latest tactic by Mr. Hicks
10   and his clients not only demonstrates that the filing of this
11   action is a violation of Rule 11, but also itself constitutes a
12   direct and blatant violation of Rule 5-120 of the California
13   Rules of Professional Conduct which prohibits attorneys from
14   making statements to the media that have a "substantial
15   likelihood of materially prejudicing an adjudicative matter."

16        Such tactics should not be tolerated, particularly in
17   light of the pattern of conduct in which Mr. Hicks and his
18   clients have previously engaged.  On these facts, sanctions are
19   both appropriate and necessary to put an end, once and for all,
20   to the abuse of the judicial process by CDC and Mr. Hicks.

21

22              Factual Background

23

24        The Parties' Prior Lawsuit.  In August 1997, Mattel
25   filed an action to enjoin and recover damages for CDC's marketing
26   and selling of knock-off BARBIE dolls.  Mattel sued for, among
27   other things, copyright and trade dress infringement with respect
28   to two CDC doll heads--one made by Hong Kong manufacturer Kid

-3-

1  Kore International Ltd. (the "Kid Kore doll") and another
2  manufactured by Zoom Toys Ltd. (the "Zoom Toys" or "Claudene"
3  doll) that is also at issue in this litigation.[1]  Although Mattel
4  had been willing from the outset to license the dolls, royalty
5  free, if CDC would only take steps to eliminate the consumer
6  confusion with Mattel's BARBIE dolls that all parties
7  acknowledged to be occurring, CDC and its counsel, James B.
8  Hicks, chose instead to pursue seven baseless counterclaims
9  against Mattel for alleged anticompetitive conduct and unfair
10 business practices.  So began a pattern of vexatious and abusive
11 litigation conduct by CDC and Mr. Hicks.  In addition to pressing
12 forward with baseless counterclaims, they unsuccessfully moved
13 for reconsideration of multiple discovery orders issued by
14 Magistrate Robbins and Judge Matz, served hundreds of written and
15 deposition discovery requests on Mattel, and conducted multiple
16 depositions of some twenty-four Mattel witnesses.[2]
17         On the eve of trial in that case, after two years of
18 litigation and after Mattel obtained summary judgment on all
19 seven counterclaims brought against it,[3] Mattel obtained a
20 favorable settlement of the lawsuit.  Under the terms of that
21 settlement, CDC stipulated to a permanent injunction on the
22 infringing Kid Kore doll, paid Mattel $100,000 in royalties, and
23 agreed to take substantial specified steps to alleviate
24
25
―――――――――――――
26    [1]  Declaration of Edith Ramirez ("Ramirez Decl."), ¶ 2, 5.
27    [2]  Id., ¶ 5-6.
28    [3]  Id., ¶ 7.

07106/256938.1

1 marketplace confusion with respect to the infringing Zoom Toys

2 doll.[4]

3     <u>The Present Lawsuit</u>.  Just weeks after Mattel settled

4 with CDC, Claudene Christian's father and CDC partner, Harry

5 Christian, with the assistance of their prior counsel, James B.

6 Hicks, brought this frivolous $2.4 billion copyright action

7 against Mattel.[5]  The lawsuit names Harry Christian as plaintiff

8 and purports to join Claudene Christian and Collegiate Doll

9 Company as "involuntary defendants" so as to avoid the revocation

10 of the license Mattel granted CDC in the settlement.[6]  In fact,

11 this frivolous copyright action was authorized and filed jointly

12 by Harry Christian, Claudene Christian, Collegiate Doll Company,

13 and their joint counsel Mr. Hicks in bad faith and for the

14 improper purposes of harassing Mattel and garnering publicity for

15 CDC.[7]

16     On being served with the action, Mattel, in accordance

17 with its rights under the parties' settlement agreement, revoked

18 its permission to CDC to sell the infringing "Claudene" doll and

19 revived its prior copyright and trade dress claims in a separate

20 lawsuit that is also pending before this Court.[8]

21     The copyright claims asserted in this action by Harry

22 Christian, like the counterclaims filed by CDC in the prior case,

23

24   [4] <u>Id.</u>, ¶ 8 and Exh. D attached thereto.

25   [5] <u>Id.</u>, ¶ 9.

26   [6] Complaint, ¶ 24.

27   [7] Ramirez Decl., ¶ 9.

28   [8] <u>Id.</u>, ¶ 10.

1  are frivolous.   Plaintiff claims that Mattel has developed

2  purported "new" BARBIE doll heads that are "strikingly and

3  confusingly similar to" and infringe the same Zoom Toys doll head

4  Mattel conditionally permitted CDC to sell under the parties'

5  prior settlement agreement.[9]   The claim is utterly baseless.

6         Plaintiff and his counsel have identified two BARBIE

7  doll heads CDC claims to be infringing--the Cool Blue BARBIE doll

8  and the Virginia Tech UNIVERSITY BARBIE doll head sculptures.[10]

9  Notably, both head sculptures were created long before 1996, when

10 the Claudene doll head was created.   The Cool Blue BARBIE doll

11 uses the Neptune's Daughter head sculpture which was created by

12 Mattel in 1991 and has the legend "©1991 Mattel, Inc." molded

13 into the back of the doll head.[11]   The Virginia Tech BARBIE doll

14 uses the SuperStar BARBIE doll head sculpture which was created

15 by Mattel in 1976.   The Virginia Tech BARBIE doll has the legend

16 "©1976 Mattel, Inc." molded into the back of the doll head.[12]

17 These facts were easily ascertainable had plaintiff or his

18 counsel taken a few minutes to examine the BARBIE doll head

19 sculptures they claim infringe the Claudene doll head copyright.

20        A reasonable investigation--either an examination of

21 the copyright notice that is on the Cool Blue BARBIE and Virginia

22

23      [9]  See Complaint, ¶¶ 1, 19, 21, and 26.

24      [10]  Complaint, ¶ 21; Ramirez Decl., ¶ 11 and Exh. E attached

25 thereto.

26      [11]  See the Declaration of Suzanne Schlundt filed in support

27 of Mattel's Motion for Summary Judgment on plaintiff's copyright
   claims ("Schlundt Decl."), ¶¶ 7-10.

28      [12]  Schlundt Decl, ¶¶ 3-6.

                                    -6-

1 Tech UNIVERSITY BARBIE dolls or a comparison of these allegedly

2 "new" BARBIE doll heads to the millions of earlier BARBIE dolls

3 that indisputably existed prior to the creation of the Claudene

4 doll head--would have revealed that Mr. Christian's claims of

5 copying are groundless.  Indeed, Mr. Christian's admission that

6 the Claudene doll head is "strikingly and confusingly similar to"

7 Mattel's BARBIE doll heads demonstrates not that Mattel's BARBIE

8 doll heads infringe the Claudene doll head, but rather that the

9 Claudene doll head infringes Mattel's BARBIE head sculptures, as

10 Mattel argued in its prior action against CDC.

11 Even after Mattel filed a motion for summary judgment

12 calling attention to the fact that the doll heads sued upon were

13 created and sold for many years prior to the alleged "creation"

14 of the Claudene doll head sculpture not only through testimony

15 but also by providing numerous examples of earlier dolls bearing

16 the SuperStar BARBIE and Neptune's Daughter head sculpture,

17 plaintiff and Mr. Hicks have persisted in this frivolous suit.  A

18 classic example of Mr. Hicks' indifference to the facts is

19 captured on a videotape of the parties' early meeting of counsel

20 showing Mr. Hicks refusing to inspect and throwing aside BARBIE

21 dolls produced by Mattel that demonstrate the baselessness of

22 plaintiff's copyright infringement claims.[13]

23 _____

24 [13] On June 2, 1999, the parties conducted the early meeting of counsel pursuant to Local Rule 6.  During the meeting,

25 Mattel's counsel produced various BARBIE dolls, including a Cool Blue BARBIE doll and a Virginia Tech UNIVERSITY BARBIE doll

26 identical to the ones Mattel lodged with the Court in support of its motion for summary judgment motion on plaintiff's copyright

27 claims.  In his typical rude and unprofessional manner, counsel

28 for plaintiff, James B. Hicks, refused to inspect the dolls
(continued...)

-7-

07106/256938.1

1       <u>CDC's and Its Counsel's Latest Publicity Ploy</u>. The

2 real motives for the filing of this frivolous $2.4 billion action

3 against Mattel were made clear once again on June 17, 1999 when

4 the national tabloid television program "Extra" aired a segment

5 about CDC's dispute with Mattel.[14] Purporting to describe the

6 history of litigation between Mattel and CDC, the program

7 included statements by Claudene Christian and attorney James B.

8 Hicks, as well as an "Extra" reporter, that were replete with

9 false and misleading statements deliberately calculated to

10 disparage Mattel, to garner publicity for CDC and Mr. Hicks, and

11 to taint the outcome of these proceedings.[15] Such tactics are

12 further evidence that the objective of plaintiff and his counsel

13 in filing this frivolous action was not to redress plaintiff's

14 purported legal rights, but rather to harass Mattel and bring

15 attention to Mr. Hicks and his clients.[16]

16

17

18 _____

(...continued)

19 produced, despite the fact that they conclusively establish the
baselessness of plaintiff's copyright infringement action.

20 Ramirez Decl., ¶ 12 and Exh. F attached thereto.

21
    [14] For the convenience of the Court, attached as Exh. G to

22 the Ramirez Decl. is a videotaped copy of the "Extra" segment
that aired on June 17, 1999.

23
    [15] Specific examples of the false and misleading statements

24 made by CDC and its counsel are set forth below.

25
    [16] This is not the first time that Mr. Hicks has attempted

26 to use the parties' litigation as a vehicle through which to draw
attention to himself. Last year, based on his involvement on

27 this single ongoing case, Mr. Hicks began to tout himself as a
purported expert in BARBIE "disputes" in an unlawful effort to

28 solicit potential clients. <u>See</u> Exhs. H and I to Ramirez Decl.

## Argument

I.    THE RULE 11 STANDARD

Rule 11 of the Federal Rules of Civil Procedure requires parties or attorneys to file pleadings, motions and other papers that are well grounded in fact and warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and not interposed for any improper purpose, such as to harass or cause unnecessary delay or needless increase in the cost of litigation.  Fed. R. Civ. P. 11(b).  To discourage baseless filings, Rule 11 imposes a duty on attorneys to certify that any papers filed with the court comply with the Rule--that the filings are "well grounded in fact, legally tenable, and not interposed for any improper purpose."  Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990); see also Business Guides, Inc. v. Chromatic Communications Enterprises, Inc., 892 F.2d 802, 812 (9th Cir. 1989), aff'd, 498 U.S. 533 (1991).

The Rule thus creates an "affirmative duty of investigation both as to law and as to fact before [papers] are filed."  Golden Eagle Distributing Corp. v. Burroughs Corp., 801 F.2d 1531, 1536 (9th Cir. 1986).  It requires that counsel conduct a sufficient investigation under the circumstances to satisfy himself that sufficient factual and legal grounds exist to support the filing.  See Business Guides, 892 F.2d at 812; Rhinehart v. Stouffer, 638 F.2d 1169, 1170-71 (9th Cir. 1979).

07106/256938.1

1    If a party or his counsel files a paper in violation of

2  this Rule, a court "may impose an appropriate sanction upon the

3  attorneys, law firms, or parties that have violated [Rule 11] or

4  are responsible for the violation." Fed. R. Civ. P. 11(c).

5  Appropriate sanctions may include "an order directing payment to

6  the movant of some or all of the reasonable attorneys' fees and

7  other expenses incurred as a direct result of the violation."

8  Fed. R. Civ. P. 11(c)(2).

9    Under Rule 11, sanctions are appropriate if, measured

10  objectively, a pleading is frivolous, legally unreasonable, or

11  without factual foundation. See Zaldivar v. City of Los Angeles,

12  780 F.2d 823, 831 (9th Cir. 1986), overruled on other grounds,

13  Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 399-405 (1990).

14  Subjective good faith is not a defense to a Rule 11 motion. See

15  Zaldivar, 780 F.2d at 829; see also Smith v. Ricks, 31 F.3d 1478,

16  1488 (9th Cir. 1994) (if a pleading or motion is filed

17  frivolously from an objective view, it is inconsequential that it

18  was not filed in subjective bad faith), cert. denied, 514 U.S.

19  1035 (1995). "Frivolous" filings are "those that are both

20  baseless and made without reasonable and competent inquiry."

21  Estate of Blue v. County of Los Angeles, 120 F.3d 982, 985 (9th

22  Cir. 1997), cert. denied, 118 S. Ct. 1042 (1998); Townsend v.

23  Holman Consulting Corp., 929 F.2d 1358, 1362 (9th Cir. 1990) (en

24  banc).

25    A reasonable investigation in this case would have

26  revealed that there is no factual basis for plaintiff's

27  $2.4 billion copyright infringement action against Mattel.

28

## II. PLAINTIFF'S ALLEGATIONS OF COPYRIGHT INFRINGEMENT ARE FRIVOLOUS

Plaintiff claims that "after Mattel first obtained an example of the Claudene Doll Head in 1996, Mattel has brought out new Barbie doll heads and products which copy the Claudene Doll Head."[17] Plaintiff and his counsel, Mr. Hicks, identified two allegedly infringing Mattel BARBIE doll heads--the Cool Blue BARBIE and the Virginia Tech UNIVERSITY BARBIE doll heads.[18]

The problem with Mr. Christian's infringement claim is that Mattel's allegedly infringing dolls use head sculptures that are not "new" BARBIE doll heads, but rather doll heads that were created and sold well before the Claudene doll head was even conceived. It is axiomatic that one cannot copy a work that did not exist. See Grubb v. KMS Patriots, L.P., 88 F.3d 1, 5 (1st Cir. 1996) ("[P]rior creation renders any conclusion of access or inference of copying illogical."); see also Goldstein, Copyright (1999 Supp.) § 7.2.2 at 7:18 ("An accused infringer can conclusively rebut an inference of copying by showing that it completed its work before plaintiff commenced his."). Both of the BARBIE dolls identified by Christian as allegedly infringing use doll heads that predate the Claudene doll head by several years.

---

[17] Complaint, ¶ 19.

[18] Complaint, ¶ 21; Ramirez Decl., ¶ 11 and Exh. E attached thereto. These are the only dolls that Mr. Christian has identified to date as allegedly infringing. Ramirez Decl., ¶ 11.

1  Mattel's Cool Blue BARBIE doll uses the Neptune's

2 Daughter head sculpture, which was created in 1991 and first

3 published in February 1992.[19]  Millions of BARBIE dolls with the

4 Neptune's Daughter head sculpture have been sold to the public

5 since its creation.  All of these dolls, including the Cool Blue

6 BARBIE doll, have the legend "© 1991 Mattel, Inc." molded into

7 the back of the head sculptures.[20]

8  The doll head used on the Virginia Tech UNIVERSITY

9 BARBIE doll--the SuperStar BARBIE doll head--was created and

10 registered even earlier.  Mr. Christian himself acknowledges that

11 the "SuperStar Barbie Head . . . has been Mattel's standard

12 Barbie doll head for the prior twenty years."[21]  The SuperStar

13 BARBIE doll head was created in 1976 and first published in

14 January 1977.[22]  Not surprisingly, the SuperStar BARBIE head

15 sculpture has been used on tens of millions of BARBIE dolls sold

16 to the public since 1977.  Each of these doll heads has the "©

17 1976 Mattel, Inc." notice molded into the head sculpture.[23]

18 Numerous pre-1996 examples of each of these doll heads have been

19 provided to CDC and Mr. Hicks since the inception of this

20 action.[24]

21

22

---

23  [19]  Schlundt Decl., ¶¶ 7-10.

24  [20]  Schlundt Decl., ¶¶ 9-10.

25  [21]  Complaint, ¶ 19.

26  [22]  Schlundt Decl., ¶ 3.

27  [23]  Schlundt Decl., ¶¶ 4, 6.

28  [24]  Ramirez Decl., ¶ 12.

1    The fact that the Cool Blue and Virginia Tech BARBIE
2    dolls use head sculptures that predate the Claudene doll head by
3    several years would have been readily ascertainable had plaintiff
4    or Mr. Hicks bothered to examine the allegedly infringing BARBIE
5    head sculptures, which have a copyright notice molded into them,
6    or compared them to the thousands of BARBIE dolls and pictures of
7    BARBIE dolls created prior to 1996.  Certainly Mr. Hicks, who has
8    touted himself as an expert in "BARBIE" disputes, should have
9    taken the time to determine from such readily accessible sources
10   if there was any factual basis for the filing of a $2.4 billion
11   action.

12       The wholly implausible $2.4 billion damages claim
13   asserted by plaintiff is in and of itself sufficient for a
14   finding of frivolousness and improper purpose under Rule 11.  The
15   Ninth Circuit has made clear that "prior to filing a civil
16   action, an attorney has a duty to make an investigation to
17   ascertain that the damages sought appear to bear a reasonable
18   relation to injuries actually sustained." Hudson v. Moore
19   Business Forms, Inc., 836 F.2d 1156, 1163 (9th Cir. 1987)
20   (internal quotations omitted).  Here, not only is there no
21   factual foundation for the claim of infringement but the damages
22   sought are so blatantly out of proportion to any injury that
23   plaintiff could have arguably sustained as to render the claim
24   utterly indefensible and clearly without legal or factual
25   foundation.

26
27
28

-13-

1    In view of the patent baselessness of plaintiff's $2.4

2  billion copyright infringement action, sanctions should be

3  imposed on both plaintiff and his counsel.[25]

4

5  III. PLAINTIFF AND HIS COUNSEL HAD AN IMPROPER MOTIVE IN FILING

6      AND PURSUING THIS SUIT

7

8    That plaintiff and his counsel James B. Hicks had

9  ulterior motives in bringing this frivolous action against Mattel

10  was most recently evidenced by their latest publicity stunt.  In

11  an attempt to improperly influence the outcome of this case,

12  aggrandize himself and prejudice Mattel, Mr. Hicks sought

13  national television coverage for himself and his clients on the

14  tabloid show "Extra."  He made extrajudicial statements to the

15  public through an "Extra" reporter, his clients and himself,

16  presenting a summary version of the parties' past and present

17  litigation that was replete with false and misleading statements

18  calculated to disparage Mattel.  This conduct was not only

19  _____

20    [25]  In addition to the baselessness of plaintiff's
    infringement claim, plaintiff's claim of joint authorship of the
21  Claudene doll head is, as demonstrated in Mattel's pending
    summary judgment motion, also without factual foundation.  The
22  documentary evidence demonstrates that the Claudene doll head
    sculpture was created by Zoom Toys and was based on a preexisting
23  work, the Kid Kore doll head, which Claudene Christian and CDC
    have conceded infringes Mattel's BARBIE doll head copyrights.
24  See Exhs. A-J attached to the Declaration of Adam D. Samuels
    filed in support of Mattel's Motion for Summary Judgment on
25  plaintiff's copyright claims.  Moreover, Harry Christian and his
    counsel have admitted that the Claudene doll head is "strikingly
26  and confusingly similar to" two preexisting BARBIE dolls and is
    therefore is not an original work.  The Claudene doll head
27  copyright is therefore invalid and unenforceable.

28

1  unfair, it was in direct and knowing violation of Rule 5-120 of

2  the California Rules of Professional Conduct, which provides in

3  pertinent part:

4         A member who is participating or has

5         participated in the investigation or

6         litigation of a matter shall not make an

7         extrajudicial statement that a reasonable

8         person would expect to be disseminated by

9         means of public communication, if the member

10        knows or reasonably should know that it will

11        have a substantial likelihood of materially

12        prejudicing an adjudicative proceeding in the

13        matter.

14  Rule 5-120, California Rules of Professional Conduct (West 1996).

15        To determine whether an extrajudicial statement

16  violates Rule 5-120, a court may consider the following factors:

17        (1) whether the extrajudicial statement presents

18        information clearly inadmissible as evidence in the

19        matter for the purpose of proving or disproving a

20        material fact in issue;

21        (2) whether the extrajudicial statement

22        presents information the member knows is

23        false, deceptive, or the use of which would

24        violate Business & Professions Code 6068(d);

25        (3) whether the extrajudicial statement

26        violates a lawful "gag" order, or protective

27        ·order, statute, rule of court, or special

28        rule of confidentiality; and

-15-

(4) the timing of the statement.

See Discussion to Rule 5-120 (West 1996).

The statements made by and at the direction of Hicks to the Extra reporter and the public are precisely the type of conduct that Rule 5-120 seeks to proscribe.[26]

A.    The False and Misleading Statements By CDC and Its Counsel

The following is a non-exhaustive list of the misstatements and omissions made by Mr. Hicks and his clients on the "Extra" broadcast:

**Misstatement:**  Concerning the first doll sold by Collegiate Doll Company in 1990:  "Mattel answered back saying 'No infringements on Barbie whatsoever.'"

**Fact:**  Mattel never made such a statement.  Mattel approved CDC's sale, only at USC, of the stock doll made by Creata International that it was sent for review, provided the doll was not marketed as a BARBIE doll.  CDC sold less than 3,000 of the Creata dolls because they did not look enough like the BARBIE doll, so CDC switched to another doll, made by Kid Kore

---

[26]  The ultimate aim of Rule 5-120 is to protect the fairness and integrity of the adjudicative process.  See Legislative Counsel's Digest, Senate Bill 254 (August 16, 1994).

1  International Ltd., which clearly infringed on the BARBIE doll

2  and never advised Mattel of the switch.[27]

3

4      **Misstatement:**  "I get a call from US Customs:  'Sorry,

5  basically, your dolls are in jail.'  Mattel had filed suit..."

6

7      **Fact:**  Customs, not Mattel, stopped and detained the

8  first shipment of changed "Claudene" dolls (now manufactured by

9  Zoom Toys) on suspicion that it infringed the BARBIE doll, as

10 Judge Matz reminded CDC in granting summary judgment dismissing

11 its unfair competition and malicious prosecution claims.  Mattel

12 had not filed suit, and was not even aware of the Customs

13 detention or the new Zoom Toys dolls until it was contacted by

14 CDC.[28]

15

16     **Misstatement:**  "I said, 'Wait a minute, I have a letter

17 from you from 1990.'"

18

19     **Fact:**  The 1990 letter dealt with CDC's long abandoned

20 Creata doll.  The shipment detained by Customs was the first

21 shipment of the third version of the Claudene doll, from a third

22 manufacturer, Zoom Toys, which CDC never told Mattel about and

23 which Mattel had never seen before Customs stopped the shipment

24 in 1996.[29]

25

26     [27]  Ramirez Decl., ¶¶ 3-5.

27     [28]  Id., ¶ 4.

28     [29]  Id., ¶¶ 3-4.

-17-

07106/256938.1

**Misstatement:**  "But this time [Mattel sued], the once flourishing Collegiate Doll Company was crushed."

**Fact:**  The Collegiate Doll Company had lost its license and had failed long before Mattel sued because it was incompetently managed and defaulted on its financial obligations to both licensors and suppliers.  Also, CDC and its president Claudene Christian had spent the entire previous year pursuing a vindictive litigation against her former business partner Amanda Maertz, which she herself claims had distracted her from the business and had depleted company resources.  Judge Matz, who dismissed each of CDC's counterclaims against Mattel on summary judgment, stated that "[w]hatever its reasons for not being able to substantiate its allegations with actual proof, CDC's theory amounts to nothing more than pure conjecture. . . . CDC has failed to establish a genuine question of fact worthy of submission to a jury . . . .  To hold otherwise would amount to an invitation to any litigant who has suffered a setback...to make bald, unsubstantiated allegations of competitive scheming."[30]  In a later decision denying CDC's motion for leave to file supplemental claims, Judge Matz further noted:  "CDC once again relies on the same 'evidence' as before, consisting primarily of unsubstantiated insinuations by Claudene Christian."[31]

---

[30]  See Judge Matz' December 4, 1998 Order at 13-14, attached as Exh. B to the Ramirez Decl.

[31]  See Judge Matz' December 21, 1998 Order at 2, attached

(continued...)

07106/256938.1

1    **Misstatement:** "The second suit was settled this past
2  February. Claudene agreed not to sue Mattel for ruining her
3  business..."

4

5    **Fact:** This statement has no factual basis. The prior
6  suit was settled when CDC stipulated to a permanent injunction on
7  the infringing Kid Kore doll (which accounted for nearly all past
8  sales), paid Mattel $100,000 and agreed to take substantial steps
9  to avoid confusion over the Zoom doll as a condition of being
10 permitted to sell it.[32]

11

12   **Misstatement:** "Mattel wanted to drive Claudene's
13 company out of business."

14

15   **Fact:** From the outset of the case, Mattel offered CDC
16 a royalty-free license to sell both dolls if CDC would take steps
17 to avoid the consumer confusion with Mattel's BARBIE dolls that
18 all parties acknowledged to be occurring. CDC rejected Mattel's
19 proposals in order to pursue seven baseless counterclaims
20 concocted by Mr. Hicks. Even after Judge Matz dismissed all of
21 CDC's counterclaims against Mattel, Mattel generously settled its
22 own infringement claims by permitting the Christians and their
23 company, CDC, to continue selling the Zoom doll as long as they

24

25

26 _____

27 (...continued)
   as Exh. C to the Ramirez Decl.

28
    [32] See Ramirez Decl., ¶ 8 and Exh. D attached thereto.

-19-

1  took steps to avoid consumer confusion with the BARBIE doll they

2  copied.[33]

3

4      **Misstatement:**  "While Claudene agreed not to sue

5  Mattel--[her father], a co-copyright holder, didn't."

6

7      **Fact:**  Mattel never requested, and neither Claudene nor

8  her father ever agreed, not to sue Mattel.  Both Claudene and her

9  father, and their company CDC, are bound to the same terms of the

10  same settlement agreement, which provides for revocation of the

11  permission to sell the Claudene doll and revival of Mattel's

12  infringement and dilution claims in the event of a dispute over

13  the sham "Claudene" doll head copyright.

14

15     **Misstatement:**  "Now Rex is claiming Mattel copied

16  Claudene's doll design last year, when it updated BARBIE."

17

18     **Fact:**  The UNIVERSITY BARBIE doll sued upon and

19  pictured alongside the Claudene doll in the "Extra" segment was

20  not "updated" last year. It bears the 23-year-old SuperStar head

21  sculpture which the Claudene doll infringes, not the other way

22  around.  That head sculpture has not changed since it was created

23  in 1976--the copyright date molded onto the head.[34]  What "Rex"

24  is actually claiming in this lawsuit is that the Claudene doll is

25  substantially similar to two BARBIE doll head sculptures created

26

27  _____

   [33]  Ramirez Decl., ¶ 4, 8.

28
   [34]  Ramirez Decl., ¶ 13.

1  long before it--the SuperStar BARBIE doll head and the Neptune's

2  Daughter BARBIE doll head.

3

4    B.    **This Court Should Sanction Mr. Hicks For His Violations**

5            **Of Rule 11 and the Rules Of Professional Conduct**

6

7        Attempts such as those made by Mr. Hicks to disparage

8  Mattel and to litigate this dispute in the press rather than the

9  courtroom demonstrate his improper motives in filing this

10 litigation and are directly contrary to Rule 5-120.  Moreover,

11 Hicks knowingly and deliberately presented false and deceptive

12 information to the Extra reporter and the public, with the

13 obvious intent of disparaging Mattel and its position in this

14 litigation.  This not only contravenes Rule 5-120, but also the

15 mandate of Business and Professions Code § 6068(d) that attorneys

16 are obligated "to employ, for the purpose of maintaining the

17 causes confided to him or her such means only as are consistent

18 with the truth."

19        Mr. Hick's improper purposes are (1) to influence

20 public opinion and to materially prejudice Mattel in this

21 litigation, and (2) (consistent with his unlawful solicitation of

22 defendants and potential defendants in Mattel matters) to pass

23 himself off to an unsuspecting public as an attorney who could

24 provide capable representation in litigation.  Instead, as this

25 case amply demonstrates, Mr. Hicks does not properly research or

26 assess the facts on which a case is based and is more than

27 willing to violate state professional laws prohibiting use of

28 extrajudicial means to prejudice the outcome of a case no honest

07106/256938.1

1  or competent attorney would have filed.  Given his long history

2  of incompetent representations and violation of procedural

3  rules,[35] and the classic violation of Rule 11 presented by this

4  case, this court should levy sanctions on Hicks and his law firm

5  sufficient to stop this recurring abuse.  Cf. Aetna Life Ins.

6  Co. v. Alla Medical Services, Inc., 855 F.2d 1470, 1476 (9th Cir.

7  1988) (motions filed in the context of "a persistent pattern of

8  clearly abusive litigation activities, . . . will be deemed to

9  have been filed for an improper purpose" and are sanctionable);

10  Rothman v. Jackson, 49 Cal. App. 4th 1134, 1146 (1996) ("Public

11  mudslinging, while a less physically destructive form of self-

12  help than a public brawl, is nevertheless one of the kinds of

13  unregulated and harmful feuding that courts and their processes

14  exist to prevent.").

15

16                          Conclusion

17

18       Rule 11 was designed to deter baseless filings such as

19  the one at issue here.  This $2.4 billion copyright infringement

20  action filed by plaintiff and his counsel against Mattel is both

21

22

23

24

25

26

27  [35]  See the numerous examples cited in Mattel's Opposition
    to Defendants' Motion for Order Setting Aside and Vacating

28  Default in the related case pending before this Court, Case
    No. 99-4667 at 15-17.

1  frivolous and made for improper purposes and warrants the

2  imposition of sanctions against plaintiff and his counsel.

3

4  DATED:   June 22, 1999

5                              QUINN EMANUEL URQUHART OLIVER &
                               HEDGES, LLP
6

7                              By  *Edith R.*

8                                  Edith Ramirez
                                   Attorneys for Defendant
9                                  Mattel, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

07106/256938.1



**PROOF OF SERVICE**
CCP §§ 1013A, 2015.5

STATE OF CALIFORNIA )
                         ) ss.
COUNTY OF LOS ANGELES )

       I am employed in the County of Los Angeles, State of California; I am over the age of 18 and not a party to the within entitled action; my business address is 865 So. Figueroa Street, 10th Floor, Los Angeles, California 90017.

       On __June 22, 1999__, I served the foregoing document described as __DEFENDANT MATTEL, INC.'S NOTICE OF MOTION AND MOTION FOR RULE 11 SANCTIONS; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF__ on the parties in this action by placing a true copy addressed as follows:

James B. Hicks, Esq.
Luce, Forward, Hamilton & Scripps, LLP
777 South Figueroa Street, Suite 3600
Los Angeles, California 90017

\_\_\_\_\_   **BY MAIL**

\_\_\_\_\_   I placed such envelope in the mail at Los Angeles, California. The envelope was mailed with postage thereon full prepaid.

\_\_\_\_\_   As follows: I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with U.S. postal service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more that one day after date of deposit for mailing in affidavit.

       Executed on __ , 1999, at Los Angeles, California.__

__X__   **BY PERSONAL SERVICE**

       I delivered such envelope by hand to the offices of the addressees.

       Executed on __June 22, 1999, at Los Angeles, California.__

\_\_\_\_\_   **STATE**    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

__X__   **FEDERAL**   I declare that I am employed in the office of a member of the bar of this court whose direction the service was made.

__ERIC BJORGUM__                                     _____
Type or Pri nt Name                                 Signature

04517/221259.1