THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

___ Priority
_✓_ Send
___ Clsd
_✓_ Enter
___ JS-5/JS-6
___ JS-2/JS-3

FILED
CLERK, U.S. DISTRICT COURT
JAN -5 2000
CENTRAL DISTRICT OF CALIFORNIA
BY          DEPUTY

ENTERED
CLERK, U.S. DISTRICT COURT
JAN -6 1999
CENTRAL DISTRICT OF CALIFORNIA
BY          DEPUTY

_✓_ Docketed
_✓_ Copies / NTC Sent
_✓_ JS - 5 / JS - 6
___ JS - 2 / JS - 3
___ CLSD
JAN 06 2000

ENTERED ON ICMS
JAN -6 2000
CV

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARRY R. CHRISTIAN, an individual,<br><br>Plaintiff,<br><br>v.<br><br>MATTEL, INC., a corporation; COLLEGIATE DOLL COMPANY, a sole proprietorship; and CLAUDINE CHRISTIAN, an individual,<br><br>Defendants. | CASE NO. CV99-2820 NM (BQRx)<br><br>ORDER GRANTING MATTEL'S MOTION FOR SUMMARY JUDGMENT AND RULE 11 SANCTIONS; DENYING PLAINTIFF'S SPECIAL MOTION TO STRIKE |

I

INTRODUCTION

On March 18, 1999, plaintiff Harry R. Christian ("Christian") filed this action against Mattel Inc., Collegiate Doll Company, and Claudene Christian alleging a single claim for copyright infringement. Plaintiff seeks both damages of $2.4 billion and injunctive relief. Plaintiff contends that Mattel is marketing and selling dolls and other products under the "Barbie" name which are strikingly and confusingly similar to plaintiff's copyrighted Claudene Doll Head.

On April 20, 1999, Mattel filed a First Amended Counterclaim alleging six

claims against plaintiff: 1) Trade Libel under the Lanham Act; 2) Contributory Trade Dress Infringement under the Lanham Act; 3) Unfair Competition under the Lanham Act; 4) Unfair Competition under Cal. Bus. & Prof. Code § 17200 and California common law; 5) Civil Conspiracy to commit Unfair Competition and 6) Declaratory relief pursuant to 28 U.S.C. § 2201(a).

On May 17, 1999, plaintiff filed a motion to strike or dismiss Mattel's First Amended Counterclaims, or in the alternative, for a more definite statement.[1] On May 18, 1999, defendant Mattel filed a motion for summary judgment and on June 13, filed a motion for Rule 11 sanctions. Opposition and reply papers were timely filed.

Before the court are three motions: 1) Mattel's Motion for Summary Judgment on plaintiff's claim of copyright infringement; 2) Plaintiff's Special Motion to Strike Mattel's Counterclaims pursuant to California's Anti-SLAPP statute, and 3) Mattel's Rule 11 Motion for sanctions. Upon full consideration of the moving, opposition, and reply papers, the parties' arguments and authorities, and the entire record herein, the court <u>grants</u> Mattel's motion for summary judgment, <u>denies</u> plaintiff's special motion to strike Mattel's counterclaims, and <u>grants</u> Mattel's motion for Rule 11 sanctions.

---

[1] Briefing on this motion was completed with the filing of Mattel's Reply Brief on October 4, 1999. Nevertheless, without seeking or obtaining permission from the court, plaintiff continued to file multiple "supplemental" pleadings up to the date of the hearing and following the court's announcement that the matter had been submitted. Plaintiff's supplemental pleadings, along with the initial pleadings, exceeded the permissible page limits and failed to adhere to Local Rule 3.4.1. The court decides this motion based on the memorandum in support of the motion, plaintiff's opposition, and defendant's reply.

The Ninth Circuit has observed that, "the process of evaluating a summary judgment motion would be flouted if requests for more time, discovery, or the introduction of supplemental affidavits had to be considered even if requested well after the deadline set for the introduction of all information needed to make a ruling has passed." Ashton-Tate Corp. v. Ross, 916 F.2d 516, 520 (9th Cir. 1990).

## II

## RELEVANT FACTUAL BACKGROUND

This case derives from a lawsuit filed in 1997 and assigned to Judge Matz, in which Mattel sued Collegiate Doll Company ("CDC") and its president, Claudene Christian, who is the daughter of the plaintiff in this action, Harry Christian, who was, in turn, the Chief Financial Officer and co-founder of CDC. See Mattel Motion for Summary Judgment ("Def. Mot."), p. 3; see also Opp. to Motion to Strike, Samuels Dec., Exhibits G, H, & L. (letter to CDC customer signed by Harry Christian as co-founder of CDC, CDC company directory listing Harry Christian as Chief Financial Officer, and IRS document evidencing payment to Harry Christian). In essence, Mattel alleged that CDC's "Claudene" dolls infringed on Mattel's copyright in its "Barbie" dolls.

CDC filed numerous counterclaims, all of which Judge Matz ultimately dismissed.[2] Thereafter, the case settled, with CDC agreeing to pay Mattel $100,000 and to take steps to avoid any future confusion between CDC's dolls and Mattel's Barbies. Def. Mot., Samuels Dec., Exh. W. There was some dispute as to what the Settlement Agreement provided, but it is undisputed that it purported to bind Ms. Christian, CDC, its successors in interest, and its representatives. Id. The Settlement Agreement provided that Mattel would not challenge CDC's alleged copyright in its Claudene doll heads, but futher provided that should CDC "or any successor in interest" file suit challenging Mattel's right to market its Barbie dolls and invoking its own alleged copyright in its Claudine dolls, Mattel was once again free to challenge CDC's alleged copyright. Id.

---

[2] Judge Matz granted summary judgment in Mattel's favor dismissing Claudene Christian's and CDC's seven counterclaims for federal and state antitrust violations, unfair business practices, attempt to monopolize under the Sherman and Cartright Acts, malicious prosecution, and copyright, trademark, and trade dress misuse. See Judge Matz Order filed December 4, 1998 and January 22, 1999 (Mattel Inc. v. Claudene Christian, CV97-6056 AHM (BQRx)).

Approximately one month after the Settlement Agreement was signed, Harry Christian brought this suit, alleging that certain Barbie dolls (only one was specified in the complaint) infringed on the Claudene doll head copyright which plaintiff now claims was jointly held by his daughter and himself. Complaint, ¶ 9. Christian alleged he was not a party to the Settlement Agreement and that his lawsuit did not constitute a breach of the Agreement. It is undisputed that the terms of the Settlement Agreement bind all predecessors and representatives of both CDC and Mattel. Settlement Ag., ¶ 10. Moreover, under the Settlement Agreement, the event reviving Mattel's right to challenge CDC's alleged copyright is triggered whether CDC or any successor in interest files suit. Id. ¶ 6.

In the current action, plaintiff Christian has identified two different Barbie doll heads as allegedly infringing the Claudene doll head copyright — Cool Blue Barbie and the Virginia Tech University Barbie. Mattel's Uncontroverted Material Facts ("UF"), ¶ 1.[3] In creating the Cool Blue Barbie, Mattel used the doll head sculpture of another Barbie doll, the Neptune's Daughter Barbie doll head, which was created and copyrighted by Mattel in 1991. UF, ¶ 2; Samuels Dec., Exh. O. Similarly, in creating the Virginia Tech University Barbie, Mattel used the doll head sculpture of the SuperStar Barbie doll which was created and copyrighted by Mattel in 1976. UF, ¶ 3; Samuels Dec., Exh. P.[4] The lighter face paint used on the Cool Blue and Virginia Tech Barbies was used as early as 1994 on Mattel's Colonial Barbie and in 1995 on Mattel's Pioneer Barbie.

---

[3] Plaintiff's complaint names only the Cool Blue Barbie as an infringing doll. See Complaint, ¶ 21. However in his Genuine Issues in Opposition to Mattel's motion, plaintiff alleges that the University Barbie also infringes the CDC doll and that both 1997 Mattel doll head/face combinations are "strikingly and confusingly similar to" the Claudene doll head. Pl. Gen. Iss., ¶¶ 3 & 5.

[4] During the hearing on this motion, plaintiff's counsel named two other dolls which allegedly infringed the CDC doll — the Chelsea doll and the CEO Barbie doll. However, neither doll was named in plaintiff's complaint or in the opposition papers.

4

# III
# DISCUSSION
## A
### Mattel's Motion for Summary Judgment

Summary judgment standard

Summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corporation v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555 (1986)(quoting Fed. R. Civ. P. 1). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

In a trilogy of 1986 cases, the Supreme Court clarified the applicable standards for summary judgment. See Celotex, supra; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505 (1986); Matsushita Electrical Industry Co. v. Zenith Radio Corp., 475 U.S. 574, 106 S.Ct. 1348 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Anderson, 477 U.S. at 256, 106 S.Ct. at 2514. The governing substantive law dictates whether a fact is material; if the fact may affect the outcome, it is material. Id. at 248, 2510. If the moving party seeks summary adjudication with respect to a claim or defense upon which it bears the burden of proof at trial, it must satisfy its burden with affirmative, admissible evidence. By contrast, when the non-moving party bears the burden of proving the claim or defense, the moving party can meet its burden by pointing out the absence of evidence submitted by the non-moving party. The moving party need not

5

1  disprove the other party's case. See Celotex, 477 U.S. at 325, 106 S.Ct. at 2554.

2  If the moving party meets its initial burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

When assessing whether the non-moving party has raised a genuine issue, the court must believe the evidence and draw all justifiable inferences in the non-movant's favor. Anderson, 477 U.S. at 255, 106 S.Ct. at 2513 (citing Adickes v. S.H. Kress and Company, 398 U.S. 144, 158-59, 90 S.Ct. 1598, 1608-09 (1970)). Nonetheless, "the mere existence of a scintilla of evidence" is insufficient to create a genuine issue of material fact. Id. at 252, 2512. As the Supreme Court explained in Matsushita,

> [w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.... Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no "genuine issue for trial."

Id., 475 U.S. at 586-87, 106 S.Ct. at 1356 (citations omitted).

To be admissible for purposes of summary judgment, declarations or affidavits must be based on personal knowledge, must set forth "such facts as would be admissible in evidence," and must show that the declarant or affiant is competent to testify concerning the facts at issue. Fed. R. Civ. P. 56(e). Declarations on information and belief are insufficient to establish a factual dispute for purposes of summary judgment. Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

## B

## Summary Judgment

"To establish copyright infringement, the holder of the copyright must prove both valid ownership of the copyright and infringement of that copyright by the alleged infringer . . . ." North Coast Indus. v. Jason Maxwell, Inc., 972 F.2d 1031, 1033 (9th Cir. 1992). In its motion for summary judgment, Mattel argues both that it could not have infringed plaintiff's purported copyright and that plaintiff does not own a copyright interest in the Claudene doll head.[5] This court decides the motion based on Mattel's first argument.

Plaintiff's infringement claim rests on the allegation that Mattel, after seeing the Claudene doll head in 1996, created a Barbie doll with a different face, "based on a completely new facial casting that is enhanced with light makeup . . . ." Pl. Opp. Mot., p. 2. Mattel counters that the two allegedly infringing Barbie dolls — Cool Blue Barbie and the Virginia Tech University Barbie — use head sculptures created in 1991 and 1976, respectively, and were first sold well before the Claudene doll head was conceived in 1996.[6] Mattel further notes that the light face paint used on the two allegedly infringing dolls had been used by Mattel on other Barbie dolls since at least 1994.

A basic element of a copyright infringement claim is copying by the alleged

---

[5] Although the copyright registration for the Claudene doll head lists both Claudene M. and Harry R. Christian as the authors (Samuel Dec., Exh. T) in a prior related case, the Claudene Doll Company ("CDC") claimed to own the registration for the doll head. See Judge Matz's Order, December 4, 1998 Granting in Part and Denying in Part Mattel's Motion for Summary Judgment, p. 2 (citing Christian Dec., ¶ 10 "CDC obtained copyright registration for the doll head . . . .")

[6] In his opposition to summary judgment, plaintiff complains of being denied access to post-1996 Barbies. It is unclear what plaintiff is requesting when he seeks access to post-1996 Barbies. Many of the dolls made available to plaintiff by Mattel were released after 1996 but may have been created using pre-1996 head sculptures. The magistrate judge reviewing this case did not find Mattel to have been uncooperative during discovery.

was designed to create an affirmative duty of investigation both as to the law and as to fact before motions are filed. It creates an objective standard of 'reasonableness under the circumstances.' [citation omitted] This was intended to be a standard 'more stringent than the original good faith formula' so 'that a greater range of circumstances will trigger its violation.'" Id. (citing, Advisory Committee Note, 97 F.R.D. 165, 198 (1983).

The test imposed by Rule 11 is an objective one. See Zaldivar v. City of Los Angeles, 780 F.2d 823, 831 (9th Cir. 1986). A finding of improper purpose can be determined following the court's own review of the facts and the law; where there is no legal or factual basis for a claim, improper purpose may be deduced. See Huettig & Schromm, Inc. v. Landscape Contractors Council, 790 F.2d 1421, 1427 (9th Cir. 1986).

A basic purpose of Rule 11, is to "'reduce frivolous claims, defenses or motions' and to deter 'costly meritless maneuvers,' . . . [thereby] avoid[ing] delay and unnecessary expense in litigation." Golden Eagle, supra at 1536. While expediting litigation is a basic purpose of Rule 11, it is not the sole purpose. In appropriate circumstances, a district court may impose a punitive sanction for the filing of a paper that lacks factual foundation and is intended to mislead the Court and opposing parties, even if the paper does not significantly delay proceedings, because of the disrespect shown to judicial process. See Business Guides, Inc. v. Chromatic Communications Enterprises, Inc., 498 U.S. 533, 543, 111 S.Ct. 922, 929 (1991) (Rule 11 "mandates that all signers consider their behavior in terms of the duty they owe to the court system to conserve its resources and avoid unnecessary proceedings.").

Finally, a district court has a mandatory duty to impose sanctions for a violation of Rule 11, though the court has discretion on the appropriate amount or nature of the sanction. See Hudson v. Moore Business Forms, Inc., 898 F.2d 684, 686-87 (9th Cir. 1990); Eastway Constr. Corp. v. City of New York, 762 F.2d 243,

254 n. 7 (2d Cir. 1985) ("Unlike the statutory provisions that vest the district court with discretion to award fees, Rule 11 is clearly phrased as a directive. Accordingly, where strictures of the rule have been transgressed it is incumbent upon the district court to fashion proper sanctions.").

This court finds that plaintiff's counsel has filed a meritless claim against defendant Mattel. A reasonable investigation by Mr. Hicks would have revealed that there was no factual foundation for plaintiff's copyright claim. Simply by examining the back of the heads of the Barbie dolls he claims were infringing, Mr. Hicks would have noticed the pre-1996 copyright notices on the Cool Blue and University Barbie doll heads. In addition, Mr. Hicks had no basis for his later claim (never raised in the complaint) of infringement by pre-existing face paintings. Defendant's summary judgment motion filed on May 18, 1999 alerted Mr. Hicks to the existence of pre-1996 Mattel Barbies with lighter face paint. Even after being alerted that his claims were baseless, Mr. Hicks persisted in the absence of any evidence to refute what is irrefutable — that what he claims infringes on the Claudene doll head pre-dates its creation.[11]

Mr. Hicks has filed a case without factual foundation. Moreover, while this court cannot evaluate Mr. Hicks' conduct in the litigation before Judge Matz, his conduct in this case and the related one pending before this court has fallen below the standards expected of attorneys practicing in the Central District of California. In the related case, this court has already ordered Mr. Hicks to personally pay plaintiff's attorney's fees incurred as a result of his culpable conduct. Order of

---

[11] Fed. R. Civ. P. 11 (c) (1) (A) requires the party against whom sanctions are sought to be served 21 days before the motion is filed and given an opportunity to withdraw the claim. Hicks was given that opportunity. See Mattel's Mot. Rule 11, p. 2. Mr. Hicks was served with Mattel's Rule 11 motion June 22, 1999. Mr. Hicks did not withdraw his claim.

13

infringer of the plaintiff's copyrighted material. Sid & Marty Krofft Television v. McDonald's Corp., 562 F.2d 1157, 1162 (9th Cir. 1977). In order to establish that Mattel copied a preexisting work, plaintiff must show that Mattel had access to the prior work and that Mattel's work is substantially similar to the prior work in both ideas and expression. See North Coast, 972 F.2d at 1033; 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 12.11 [B] n. 50 (1991) (two elements for establishing infringement are access and similarity).

Here, plaintiff fails to establish the first element of infringement, viz., access. Plaintiff identifies two Mattel dolls that allegedly infringe plaintiff's copyright. Both dolls were created using head sculptures created and copyrighted before the creation of the Claudene doll head in 1996. Both the Cool Blue Barbie and the Virginia Tech University Barbie bear 1991 and 1976 copyright registration marks, respectively, on the back of the doll heads. Plaintiff offers no evidence to dispute the fact that the allegedly infringing dolls were created using pre-1996 head sculptures.

Plaintiff argues that Mattel changed the face painting on Cool Blue Barbie and the Virginia Tech University Barbie after Mattel viewed the Claudene Doll Head.[7] This argument is flawed for several reasons. First, plaintiff's copyright registration is limited in scope and extends only to 3-dimensional sculptures and not 2-Dimensional artwork, see Def. Mot., Samuels Dec., Exh. T, p. 67. Moreover, it undisputed that Mattel was using the lighter face paint on dolls produced before the Claudene doll was created in 1996, such as the Colonial Barbie (1994) and the Pioneer Barbie (1995). UF, ¶ 17[8] Finally, Mattel, as the

---

[7] Ironically, at his deposition, Harry Christian identified the head of a pre-existing Pioneer Barbie doll — first sold to the public in 1995 — as an infringing doll with the "look" of the 1996 Claudene doll. Videotape Depo., Tape B.

[8] Mattel's counsel showed these pre-1996 Barbies with the same face paint as the later-created CDC dolls to plaintiff's counsel at the early meeting of counsel on June 2, 1999. Def.

copyright owner of Barbie head sculptures, has the exclusive right to prepare derivative works of its own copyrighted works. See 17 U.S.C. § 106(2). Thus Mattel has the right to paint and re-paint it own copyrighted head sculptures.[9]

Plaintiff has failed to identify any potentially infringing doll, and those he has identified can be shown conclusively to have been based on head sculptures of Barbie dolls produced long before the Claudene Doll was ever created. Moreover, Mattel had been changing the face paint on its copyrighted heads well before any Claudene Dolls had ever been produced. Because plaintiff fails to raise any genuine issues of material fact which if resolved in plaintiff's favor would entitle him to relief, defendant is entitled to summary judgment.

B

Plaintiff's Motion to Strike or Dismiss or for a More Definite Statement

Plaintiff seeks to strike Mattel's six counterclaims pursuant to California's Anti-SLAPP Statute (Strategic Lawsuits Against Public Participation) and alleges these counterclaims arise from plaintiff's protected act of filing suit for copyright infringement.[10] However, plaintiff concedes that Mattel can avoid dismissal of its

---

Opp. Mot. to Strike, Pruetz Dec., ¶ 6.

[9] Section 101(3) of 17 U.S.C. defines derivative works as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization, motion picture version, sound recording, art reproduction, abridgment, condensation, or any other form in which a work may be recast, transformed, or adapted." Mattel owns the copyright to Barbie and changes Barbie's look constantly to keep the doll "in fashion." See Samuels Sup. Dec., Exhibits A-C.

[10] California's Anti-Slapp law, Cal. Civ. Proc. Code § 425.16(b)(1) states: " A cause of action arising from any act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim."
This statute was passed in January 1993 in response to the legislature's concern about civil actions aimed at private citizens to deter or punish them for exercising their political or legal

9

counterclaims under the Anti-SLAPP statute if Mattel can demonstrate that plaintiff's suit for copyright infringement is a sham suit. Pl. Reply, p. 2.

Here, Mattel has met its burden of demonstrating that plaintiff has engaged in sham litigation. As noted above, plaintiff Harry Christian is clearly a representative of CDC, and it is undisputed that he was personally involved in the prior litigation settled less than a month before this suit was brought. The representation of Mattel's counsel that plaintiff attended the settlement conference in that case was uncontested. Def. Opp. Strike, Samuels Dec., ¶ 10. This is not surprising, in light of the fact that CDC itself appears to consist of Claudene and her father. There can be little doubt that Mattel believed — and plaintiff did not indicate otherwise — that it had resolved any claim that Mattel's Barbie doll infringed on any alleged copyright for the Claudene doll head. Nevertheless, Harry Christian, claiming to assert only his personal right as a co-author of the copyright (a right not raised in the prior litigation) purports to resuscitate the same claims settled in the prior suit against his daughter and the company of which he is co-founder and chief financial officer. Thus, this court finds that plaintiff's suit for copyright infringement is a sham suit. Accordingly, the court denies plaintiff's motion to strike defendant's counterclaims.

The court also denies plaintiff's motion to dismiss Mattel's counterclaims pursuant to Fed. R. Civ. P. 12(b)(6) or demand for a more definite statement. Mattel has satisfied the Rule 8 pleading requirements by providing a "short and plain statement" of each claim for relief. Fed. R. Civ. P. 8(a). Although plaintiff seeks to dismiss Mattel's counterclaims, he makes only the following cursory

---

rights. United States v. Lockheed Missiles & Space Co., 171 F.3d 1208, 1215 (9th Cir. 1999) (citing Wilcox v. Superior Court, 27 Cal.App.4th 809, 33 Cal Rptr.2d 446 (1994)). The hallmark of a SLAPP suit is that it lacks merit, and is brought with the goals of obtaining an economic advantage over a citizen party by increasing the cost of litigation to the point that the citizen party's case will be weakened or abandoned. Wilcox, 27 Cal.App.4th at 816, 33 Cal.Rptr.2d at 450.

10

1  statement in support of dismissal, "[a]s detailed above, Mattel had sued the
2  plaintiff primarily for filing this pending copyright infringement lawsuit against
3  Mattel. Since filing and pursuing a lawsuit is constitutionally protected by the
4  First Amendment, Mattel's counterclaim should be dismissed under Fed. R. Civ.
5  P. 12(b)(6)...." Pl. Mot., p. 16. Plaintiff alleges no other basis for dismissal.
6  Given that a Rule 12(b)(6) dismissal is proper only where there is either a "lack of
7  a cognizable legal theory" or "the absence of sufficient facts alleged under a
8  cognizable legal theory," this court <u>denies</u> plaintiff's motion to dismiss Mattel's
9  counterclaims. <u>See</u> <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696, 699 (9th Cir.
10 1990); <u>see also</u> <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957) (court
11 must deny 12(b)(6) motion unless it appears plaintiff can prove no set of facts that
12 would entitle him to relief).

C

<u>Mattel's Motion for Rule 11 Sanctions</u>

<u>Rule 11 Standard</u>

Rule 11 provides in relevant part:

> Every pleading, motion, and other paper ... [filed with the Court] shall be signed by at least one attorney of record [or the party ...] The signature of an attorney or party constitutes a certificate by the signer that the [paper ...] is [1] well grounded in fact and is [2] warranted by existing law or a good faith argument for the extension ... of existing law ... and [3] that it is not interposed for any improper purpose ... If a ... paper is signed in violation of this rule, the court ... shall impose ... an appropriate sanction

"Under the 1983 amendments to Rule 11, an attorney signing any motion in federal court warrants that the motion is well-grounded in fact, that it is warranted by existing law ... and it is not filed for an improper purpose. Breach of the warranty gives rise to mandatory sanctions against the represented party, the lawyer, or both." <u>Golden Eagle Distributing Corp. v. Burroughs Corp.</u>, 801 F.2d 1531, 1536 (9th Cir. 1986). Prior to the 1983 amendments, under the old rules "a lawyer certified that there was 'good ground' to support a pleading. Disciplinary action was appropriate only for 'willful violation.'" <u>Id.</u> However, "[t]he new Rule

11

July 13, 1999 in CV99-4667.[12] In connection with the instant motion and the discovery preceding it, he has behaved boorishly,[13] misrepresented the facts,[14] and misstated the law.[15] Accordingly, the court grants defendant's motion for Rule 11

---

[12] In the related case, as a result of Mr. Hick's failure to timely respond to the complaint, his client suffered a default. He moved to have the default set aside, and filed what purported to be a "motion to dismiss" without the supporting memorandum required by the Local Rules of this Court. Mr. Hicks steadfastly denied failing to comply with the Local Rules, and claimed to have misunderstood the clear and unambiguous language of the rules. He did not appear at the oral argument on the hearing, and the court, while setting aside the default to permit resolution of the case on the merits, ordered Mr. Hicks to personally pay Mattel's attorney fees for opposing the motion.

[13] In a videotaped Early Meeting of Counsel of June 2, 1999, Mr. Hicks can be observed tossing Barbie dolls off a table. Early Meeting of Counsel Video., Tape F. In another deposition of Harry Christian, following a damaging admission by his client that a pre-1996 Barbie doll allegedly infringed the later created Claudene doll head, Mr. Hicks interrupted the deposition and would not permit opposing counsel to proceed. Christian Depo., Tape B.

[14] At oral argument, Mr. Hicks insisted he had never seen a particular catalogue. However, the videotape of exhibit inspection by Mr. Hicks shows him leisurely thumbing through the catalogue. June 29, 1999 Inspection of Exhibits by Plaintiff's Counsel Video., Tape C. Similarly, in plaintiff's Genuine Issues Statement, Mr. Hicks claims that the complaint, in paragraphs 21 and 26, identifies two Mattel Barbies as infringing the CDC copyright, however the complaint names only the Cool Blue Barbie as infringing. See Pl. Gen. Iss., ¶ 5; Complaint, ¶ 21. Finally, Mr. Hicks cites the Schlundt Declaration for the proposition that Cool Blue and University Barbies were introduced in 1997, and thus alleges there was a factual basis for plaintiff's copyright claim. Pl. Gen. Iss., ¶ 3. However, in her declaration, Ms. Schlundt clearly states that the dolls were based on pre-1996 copyrighted head sculptures. Schulundt Dec., ¶¶ 6 & 10.

[15] Mr. Hicks cites Ashton-Tate Corp. v. Ross, 916 F.2d 516, 521 (9th Cir. 1990) for the proposition that to be a joint author of a copyright each author need not show that his/her contributions were "independently copyrightable contribution[s]." Pl. Opp. Mot., p. 17. Mr. Hicks also cites Nimmer on Copyright for the same proposition that, "the Copyright Act merely requires that the parties intended to jointly own the work, and that the statutory language contains no requirement that each contribute an independently copyrightable component to the joint work." Id. However, Mr. Hicks has misstated both the Ninth Circuit's holding in Ashton-Tate and Prof. Nimmer. Although, the Ashton-Tate court noted that academic authorities were split on what type of contribution the copyright law required for joint authorship purposes, the court unequivocally stated, "our circuit holds that joint authorship requires each author to make an independently copyrightable contribution [for joint authorship purposes]." Ashton-Tate, supra at 521. The court outlined the approach advocated in Nimmer, rejected it, and affirmed the

sanctions against Mr. Hicks.  Estate of Blue v. County of Los Angeles, 120 F.3d 982, 985 (9th Cir. 1997)(a complaint is frivolous for purposes of Rule 11 if it is baseless and filed without reasonable inquiry).

## IV
## CONCLUSION

For the reasons set forth above, the court hereby grants Mattel's motion for summary judgment, denies plaintiff's special motion to strike Mattel's counterclaims, and grants Mattel's motion for Rule 11 sanctions.  The court will determine the appropriate amount of sanctions after reviewing Mattel's submission of its fees in defending this litigation, in accordance with this court's Order Re Submission of Attorney's Fees and issued concurrently with this order.

IT IS SO ORDERED.

DATED: January 5, 2000

Nora M. Manella
United States District Judge

---

contrary approach. Id. Prof. Nimmer, in turn, acknowledges that the Ashton-Tate decision expressly rejected his view in favor of the alternative position that each joint author make an independent copyrightable contribution. Nimmer on Copyright, § 6.07 at 6-24 n.5 (1999). Mr. Hicks blatantly misstates the law in this circuit, the holding of the Ashton-Tate decision, and the treatment of this issue by Prof. Nimmer.